```
UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----
```

| | |
|---|---|
| C.Y., a minor, by and through his Guardian ad Litem, BRIDGET YOUNG,<br><br>    Plaintiff,<br><br>    v.<br><br>SUTTER MEDICAL GROUP, et al.,<br><br>    Defendants.<br>─────────────────────────<br>SUTTER VALLEY HOSPITALS dba SUTTER DAVIS HOSPITAL,<br><br>    Cross-Complainant,<br>    v.<br><br>THE UNITED STATES,<br><br>    Cross-Defendant. | No. 2:25-cv-1351 WBS JDP<br><br>MEMORANDUM AND ORDER RE: CROSS-DEFENDANT'S MOTION TO DISMISS |

```
                    ----oo0oo----
```

Plaintiff C.Y. originally filed this medical malpractice action in Sacramento County Superior Court on March

1

1  21, 2024, against several Sutter entities, including Sutter Davis
2  Hospital ("Sutter"), the cross-complainant in this motion;
3  Catherine Ann McGovern (a midwife); and various other medical
4  employees, in connection with alleged negligence during his
5  prenatal care and delivery.  (Declaration of Kelli L. Taylor
6  ("Taylor Decl."), Docket No. 11-2 ¶ 2.; Docket No. 11-1 at 2.)
7          On February 21, 2025, the United States determined that
8  McGovern was acting within the scope of her deemed federal
9  employment pursuant to the Federally Supported Health Centers
10 Assistance Act, 42 U.S.C. § 233.  (Taylor Decl. ¶ 5.; Docket No.
11 11-2 at 19.)  Plaintiff then voluntarily dismissed McGovern on
12 February 25, 2025, because he had not exhausted the requisite
13 administrative remedies to sue her, and the deadline to do so had
14 long since passed.  (Taylor Decl. ¶ 6.)  Sutter was informed of
15 plaintiff's reason for dismissing McGovern and that the decision
16 that McGovern was acting within the scope of her employment by
17 the United States would apply to future claims in the action.
18 (Docket No. 11-1 at 2; Taylor Decl. ¶ 8.)
19         Nevertheless, on March 5, 2025, Sutter filed a cross-
20 complaint for indemnity and contribution against McGovern.
21 (Taylor Decl. ¶ 7.)[1]  As McGovern had been certified as a federal

---

[1] Sutter's indemnity and contribution claims sound in tort and thus fall within the scope of the Federal Tort Claims Act ("FTCA").  See Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 198 (1993) (stating that the FTCA "permits an indemnity action against the United States 'in the same manner and to the same extent' that the action would lie against 'a private individual under like circumstances'") (quoting 28 U.S.C. § 2674).
    Typically, before bringing such claims against the United States, the claimant must have first presented the claim to the appropriate federal agency, and either that claim must

2

1  employee, the United States removed the case on April 13, 2025,
2  pursuant to 42 U.S.C. § 233(c), and was automatically substituted
3  for McGovern.  (Docket No. 1 at 2.)  The United States now moves
4  to dismiss Sutter's crossclaim for lack of subject matter
5  jurisdiction, based on the derivative jurisdiction doctrine.
6  (Docket No. 11-1.)

7  I.   Derivative Jurisdiction

8           The doctrine of derivative jurisdiction was first
9  recognized over a century ago; its premise is that "[i]f the
10 state court lacks jurisdiction over the subject-matter or of the
11 parties [upon removal], the federal court acquires none, although
12 it might in a like suit originally brought there have had
13 jurisdiction."  Lambert Run Coal Co. v. Baltimore & O.R. Co., 258
14 U.S. 377, 382 (1922).  Put another way, "this doctrine of
15 derivative jurisdiction is premised on the legal fiction that a
16 case filed in state court over which that court lacks
17 jurisdiction is void from its very beginning, and a federal court
18 therefore has no jurisdiction to acquire over the case via
19 removal."  Rubie's LLC v. First American Title Company, No. 118-

---

have been denied or the agency must have made no final
disposition of it within six months.  See 28 U.S.C. § 1375.
However, U.S.C. § 2675(a) exempts from the exhaustion requirement
"such claims as may be asserted under the Federal Rules of Civil
Procedure by third party complaint, cross-claim, or
counterclaim."  28 U.S.C. § 2675(a); see also Tomlin v. Pease,
No. CIV.A. 14-202, 2014 WL 1340624 (E.D. Pa. Apr. 4, 2014)
("[T]hird party complaints brought under the FTCA are regularly
maintained against the United States in federal court, though no
party has filed an administrative complaint.") (collecting
cases).
        Both parties appear to recognize this exception and
agree that Sutter was not required to bring an administrative
claim before filing its cross-complaint.  (Docket Nos. 11-1 at 6-
7; 12 at 3.)

3

cv-01502 DAD SKO, 2018 WL 6419674, at *4 (E.D. Cal. Dec. 6, 2018).

It is hard to understand what may have prompted the Supreme Court to create this doctrine. There was no mention of it in any of the removal statutes, nor was it contained in any other Act of Congress to this court's knowledge. It is even harder to understand what useful purpose it was perceived to serve. As Judge Drozd so astutely observed in Rubie's LLC, "it makes little sense to dismiss a case for lack of jurisdiction because it was removed to the federal court that has exclusive jurisdiction." id. at *3 (noting the "strong reasons" for abolishing the doctrine and collecting cases); see also Abeywardene v. Tulino, No. CV 24-2353 (SLS), 2025 WL 1380427, at *3 (D.D.C. May 12, 2025) ("[T]his doctrine is counterintuitive and difficult to explain as a matter of first principles.") (collecting cases).

Adding to this paradox is Congress' continued adherence to this antiquated doctrine. Specifically, after Congress abolished derivative jurisdiction in 1986 as applied to removals under 28 U.S.C. § 1441(e), it seemingly went out of its way in 2002 to provide that only actions removed "under this section" would be exempt from derivative jurisdiction. See 28 U.S.C. § 1441(f). Nevertheless, this court must agree with Judge Drozd that "it appears the doctrine of derivative jurisdiction remains the law of this Circuit . . . any prior criticisms notwithstanding." Rubie's, 2018 WL 6419674, at *3 (collecting cases); see also Spruill v. Gervais, 693 F. Supp. 3d 1190, 1194-95 (D.N.M. 2023) (observing that "[t]he majority of circuits to

4

1  consider the continuing vitality of the derivative jurisdiction
2  doctrine have concluded that the federal courts' jurisdiction
3  remains derivative of state courts' jurisdiction for cases
4  removed under statutes other than § 1441.")

II. <u>Derivative Jurisdiction and 28 U.S.C § 233(c) Removals</u>

Further complicating matters, both parties point out that this court has previously observed that "[a]pplication of the derivative jurisdiction doctrine to cases removed pursuant to § 233(c) or the analogous removal provision of the Westfall Act, 28 U.S.C. § 2679(d)(2) is more questionable," because Section 233(c) provides that "upon certification . . . the action 'shall be removed . . . to the district court . . . and the proceeding deemed a tort action brought against the United States.'" <u>E.R. ex rel. Young v. Sutter Davis Hosp.</u>, No. CIV. 2:14-2053 WBS, 2014 WL 7239675, at *3 (E.D. Cal. Dec. 16, 2014)(citing 42 U.S.C. § 233(c)).  In other words, Section 233(c) provides a removal trigger -- certification of a federal employee -- which would be a nullity "if all actions so removed were dismissed for lack of subject matter jurisdiction." <u>Nye v. Hilo Med. Ctr.</u>, No. CIV.09-00220-JMS-KSC, 2010 WL 931926, at *5 (D. Haw. Mar. 11, 2020).

At oral argument, Sutter insisted that this provision obviates the derivative jurisdiction doctrine, because Section 233's language effectively creates federal jurisdiction upon removal.  In response, the United States argues that Section 233(c) is merely a mechanism for removal that does not confer federal jurisdiction, illustrating by example a case removed pursuant to the provision that was then dismissed for lack of jurisdiction.  See <u>L.T. el al. v. United States</u>, 2:21-cv-1564 WBS

5

```
 1   JDP, 2021 WL 4594688 (E.D. Cal. Oct. 6, 2021).  In its brief, the
 2   United States further takes the position that for Section 233
 3   removals, "dismissal would only result when a scoping decision
 4   had already been made in the case, as happened here."  (Docket
 5   No. 21 at 4.)  It primarily cites two cases to support this
 6   proposition: Barnaby v. Quintos, 410 F. Supp. 2d 142 (S.D.N.Y.
 7   2005), and A.Q.C. v. Bronx-Lebanon Hosp. Ctr., No. 11-cv-2656
 8   NRB, 2012 WL 170902 (S.D.N.Y. Jan. 20, 2012).
 9           This court analyzed these cases nearly a decade ago,
10   the last time it dealt with this issue, in E.R., 2014 WL 7239675.
11   The E.R. decision found Barnaby and A.Q.C. distinguishable
12   because the scoping decisions in those cases "involved the same
13   claims by the same plaintiffs for the same conduct by the same
14   federal employee defendants," whereas the certification at issue
15   in E.R. concerned a separate case entirely.  Id.  This court saw
16   no reason to "extend the effect of an employment certification
17   beyond the claims for which it was issued," and as that effect
18   did not apply to the claim in the subsequent case, the state
19   court had jurisdiction over it.  Id. at *6.
20           The specifics of this case are different.  Though
21   plaintiff dismissed McGovern after she had been certified as a
22   federal employee, the action continued, and the certification
23   remained in effect.  See Dellinger v. Richards, No. 1:18-cv-
24   02119, 2019 WL 4273878, at *4 (M.D. Pa. Sept. 10, 2019)
25   (dismissing FTCA case based on derivative jurisdiction where
26   "certification had already been issued in the same case").
27   Sutter was aware of this and would have understood that McGovern
28   was a federal employee for purposes of their case, and thus the
```

6

1    exclusive remedy as to her was a complaint filed against the
2    United States in federal court.  See A.Q.C., 2012 WL 170902, at
3    *5 ("[T]he U.S. Attorney had certified that Dr. Castillo was a
4    federal employee . . . [thus] it was clear that [he] was a
5    federal employee for purposes of any third-party claim that would
6    be filed against him.").

7         The timeline of this case also distinguishes it from
8    Nye -- a case on which Sutter heavily relies -- because, as
9    Sutter itself admits, Nye involved "a third-party complaint
10   against other providers who were later deemed employees of the
11   United States."  (Docket No. 12 at 3 (emphasis added).)  As in
12   A.Q.C. and Barnaby, a certification was not active when the
13   complaint in Nye was filed, and the state court thus had
14   jurisdiction over it.

15        In light of the distinct circumstances of this case,
16   the court finds that the derivative jurisdiction doctrine is
17   applicable.  This was not a situation where certification was "a
18   mere possibility," but a "certainty," because it had in fact
19   occurred and its legal consequence was evident.  Id. at *5; see
20   also Dellinger, 2019 WL 4273878.  Thus, unlike E.R., the court
21   need not extend the effect of that certification "beyond the
22   claim[] for which it was issued," because the scoped claim
23   remains pending.  See E.R., 2014 WL 7239675, at *6 (noting that
24   scoping decision at issue no longer had effect because the action
25   for which it was made had concluded).  Applying the derivative
26   jurisdiction doctrine here honors the meaning of a scope
27   certification, which precluded Sutter from bootstrapping the
28   action into federal court through an improperly filed cross-

7

1  complaint in state court.
2     The state court thus never had jurisdiction over
3  Sutter's cross-complaint, and "because the state trial court
4  never had jurisdiction . . . the federal court acquire[d] none."
5  High Lonesome Ranch, LLC v. Bd. Of Cnty. Commissioners for Cnty.
6  of Garfield, 61 F. 4th 1225, 1240 (10th Cir. 2023) (internal
7  citations and quotation marks omitted).
8  III. Policy Concerns
9     Sutter also raises several policy concerns that it
10 argues weigh in favor of exercising jurisdiction.  It first
11 asserts, citing Brownback v. King, 592 U.S. 209, 218 (2021), that
12 "a federal court always has jurisdiction to determine its own
13 jurisdiction," and thus that "this Court can exercise
14 jurisdiction" if it chooses.  (Docket No. 12 at 9.)  It then
15 argues that "plaintiff wants the United States in the case"; that
16 "the United States unreasonably delayed filing the scope
17 certification"; that "the United States is a necessary party";
18 and that dismissal would "run[] afoul of the principle of
19 judicial economy."  (Id. at 9-13.)
20    None of these arguments are persuasive.  "Federal
21 courts are of limited jurisdiction that possess only that power
22 authorized by Constitution and statutes," and their ability to
23 determine whether they have jurisdiction does not imply that they
24 can create jurisdiction where none exists. Kokonen v. Guardian
25 Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Moreover, a
26 party "cannot be deemed necessary if the court lacks subject
27 matter jurisdiction over the entire action."  Crisp v. U.S., 966
28 F. Supp. 973, 976 (E.D. Cal. 1997) (Wanger, J.) (citing Hughes v.

8

1  United States, 953 F. 2d 531, 541 (9th Cir. 1992)).

2  As to judicial economy, the court acknowledges that its
3  agreement with the government's interpretation of the derivative
4  jurisdiction doctrine does not produce the most practical
5  outcome, in that Sutter must now sever its claims and potentially
6  pursue separate actions.  This court is nevertheless bound by the
7  constitutional and statutory parameters of its limited
8  jurisdiction, which cannot be manufactured for convenience.

9  Sutter cites no legal or other authority supporting its
10 remaining arguments; in any case, none these arguments overcome
11 this court's obligation to abide by its jurisdictional
12 limitations.  Sutter's cross-complaint for indemnity must
13 accordingly be dismissed.  If Sutter is ultimately found liable
14 on any of plaintiff's claims against it, it will then be free to
15 pursue a claim against the United States under the FTCA for
16 indemnity and contribution after it has exhausted its
17 administrative remedies.

18 IV.  Interlocutory Appeal

19 The court discussed with the parties at oral argument
20 the possibility of an interlocutory appeal.  Though neither party
21 has moved for certification of interlocutory appeal, "[a]
22 district court may certify an order sua sponte."  Primerica Life
23 Insurance Company v. Starr, No. 5:22-cv-00212-JWH-KK, 2023 WL
24 3432207 (C.D. Cal. Apr. 3, 2023).  If any party wishes to pursue
25 such an appeal, it may do so if the court concludes that an order
26 "(1) involves a controlling question of law as to which (2) there
27 is substantial ground for difference of opinion and that (3) an
28 immediate appeal from the order may materially advance the

9

outcome of the litigation." Adams v. County of Sacramento, No. 2:22-cv-01499 WBS KJN, 2023 WL 3413672, at *1 (E.D. Cal. May 12, 2023) (citing 28 U.S.C. § 1292(b)).

As to the first factor, a question of law is controlling if "resolution of the issue on appeal could materially affect the outcome of litigation in the district court" and it is not collateral to the major issues of the case. Adams, 2023 WL 3413672, at *1 (citing In re Cement Antitrust Litig., 673 F. 2d 1020, 1026 (9th Cir. 1982)).

The question of law raised here is whether the derivative jurisdiction doctrine applies to cases removed under Section 233(c) after a scoping decision has been made in the case. If this question were to be decided in Sutter's favor, plaintiff's claim against Sutter and Sutter's cross-complaint against the United States would be resolved in a single action in this court. An immediate appeal could thus affect the outcome of the case, as it would determine whether those claims need be heard in the same or separate actions. See Adams, 2023 WL 3413672, at *1 (concluding that the first factor was satisfied because resolving the issue in plaintiff's favor would allow her to proceed with her claim).

Second, to determine whether a substantial ground for difference of opinion exists, the court "must examine to what extent the controlling law is unclear." Adams, 2023 WL 3413672, at *1 (citation omitted). As noted above, courts have repeatedly expressed unease with the derivative jurisdiction doctrine, and the Ninth Circuit has not squarely addressed its applicability to Section 233(c) removals. In light of the uncertainty surrounding

1  this doctrine, the court finds there is a substantial ground for
2  difference of opinion on the question at issue.  28 U.S.C. §
3  1292(b).
4           Third, courts have held that resolving an issue
5  "materially advances the termination of litigation if it
6  facilitates disposition of the action by getting a final decision
7  on a controlling legal issue," which would promote judicial
8  economy by "sav[ing] the courts and litigants unnecessary trouble
9  and expense."  Adams, 2023 WL 3413672, at *2 (citation omitted).
10 As in Adams, an immediate appeal could avoid the need for two
11 separate trials, in that the result of an appeal from this order
12 could avoid the need for conducting a separate trial on Sutter's
13 claim against the United States after the conclusion of this
14 action.
15          Because the factors for an interlocutory appeal are
16 satisfied here, if counsel for Sutter so requests, the court
17 would find it appropriate to stay this order and certify it for
18 such an appeal.
19          IT IS THEREFORE ORDERED that cross-defendant United
20 States' motion to dismiss (Docket No. 11) be, and the same hereby
21 is, GRANTED, and Sutter's cross-complaint against the United
22 States is hereby DISMISSED.
23          This Order is hereby CERTIFIED for immediate
24 interlocutory appeal, and this action is hereby STAYED pending
25 the outcome of such an appeal.  If no application is made to the
26 United States Court of Appeals to the Ninth Circuit to accept the
27 interlocutory appeal within ten (10) days as set forth in §
28 1292(b), or if the Ninth Circuit should deny any such

application, the stay will automatically be lifted.  If the Ninth Circuit accepts any such application, the parties shall file a joint status report with this court within fourteen days after resolution of the interlocutory appeal.

Dated:   January 8, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE